*884 BURDICK, J.,
concurring and dissenting.
I concur in all portions of the opinion; however, I cannot agree with Part III(F), where the majority decides to repeal Idaho Rule of Civil Procedure 54(e)(2) and, in doing so, to overturn a vast body of Idaho law. I see no reason in light of the many attorney fee statutes that the Idaho legislature has imposed upon its citizens to make such a drastic change.
The majority decides to replace Rule 54(e)(2)’s enumerated grounds—frivolous, unreasonable, or without foundation—with a standard permitting attorney fees to be awarded “when justice so requires.” The majority highlights awarding attorney fees “when justice so requires” honors the Legislature’s intent and Idaho Code section 12-121’s plain language. Yet the majority leaves trial judges at bay, with no guidance to decipher when justice will “so require” attorney fees to be awarded. I believe that Rule 54(e)(2)’s enumerated grounds filled this void by accurately defining “when justice so requires.” Additionally, Rule 54(e)(2)’s enumerated grounds gave sideboards to trial courts’ discretion. However now, with such an amorphous standard, there will be no effective appellate review of attorney fee awards.
I agree that the Idaho Legislature may pass attorney fee statutes, but on the other hand, I believe that the Idaho judiciary has the light to promulgate reasonable rules that will in fact help trial courts follow that statutory enactment. E.g., I.C. § 1-212 (“The inherent power of the Supreme Court to make rales governing procedure in all the courts of Idaho is hereby recognized and confirmed.”). To that end, I see Rule 54(e)(2) as nothing more than a guide to help Idaho’s trial judges define “when justice so requires.”
Moreover, I believe that the majority’s analysis will further inhibit access to justice and tilt the table even further toward moneyed interests in our courts. The majority’s analysis signifies a prominent step toward adopting the English Rule of attorney fee awards, whereby the losing party must pay for the prevailing party’s attorney fees. It is well established that broad, discretionary fee-shifting statutes raise the stakes in litigation—that is, parties will litigate not just for a judgment, but to obtain payment of them attorney fees and to avoid the other party’s attorney fees.[10] As a result, the majority’s analysis will chill litigation. And, with litigants reluctant to vindicate their rights in court, I perceive that litigants will actually have to spend more on litigation costs. The cost of litigation in Idaho will now reflect the prospect of having to pay the adverse party’s attorney fees. Indeed, I draw attention to Chief Justice Jones’s concurring opinion in Eyer v. Idaho Forest Grp., S. Ct. No. 43532 (2016) (Jones, C.J., concurring) (acknowledging “the legal system catastrophically failed [the appellants]” because they were required to pay a minimum of $185,755.30 of attorney fees after unsuccessfully seeking redress for a $1,600 timber trespass). This, in turn, will inhibit the valuable advancement of Idaho common law and deter litigation for new causes of action. In this case, the Court could have and did assert that attorney fees were proper under existing Idaho Code section 12-121 and Idaho Rule of Civil Procedure 54(e)(2). Therefore, this drastic action should not have been taken without further input from judges and attorneys.
Justice W. JONES concurs.

. The United States Supreme Court recognized in 1967 that "[ijn support of the American rule, it has been argued that since litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel.” Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475, 478-79 (1967). The widely respected Judge Richard Posner of the United States Court of Appeals for the Seventh Circuit similarly recognized that ''[t]he English rule deters litigation by (1) increasing the variance of the expected outcome of a lawsuit, and hence reducing the utility of litigation compared to settlement for the risk averse, and (2) penalizing more heavily errors in predicting the outcome of a lawsuit.” Richard A. Posner, The Economic Approach to Law, 53 Tex. L. Rev. 757, 782 (1975).